**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**THOMAS PERRY WELLS, JR.,**

**Plaintiff,**

**vs.**                                                    **Case No. 4:10cv441-MP/WCS**

**KENNETH S. TUCKER, SECRETARY,
FLORIDA DEPARTMENT OF CORRECTIONS,[1]**

**Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding *pro se*, file an amended civil rights complaint

under 42 U.S.C. § 1983.  Doc. 10.  Defendant filed an answer, doc. 19, and at the

conclusion of the discovery period, Defendant filed a motion for summary judgment.

--------------

[1] On August 24, 2011, Kenneth S. Tucker succeeded Edwin G. Buss as the
Secretary of the Florida Department of Corrections, and is automatically substituted as
Respondent.  Fed.R.Civ.P. 25(d).  Buss had succeeded McNeil.

Doc. 29.  Plaintiff was advised of his obligation to respond to the motion, doc. 30, and

Plaintiff filed a response on November 21, 2011.  Doc. 31.  Defendant was given leave

to file a reply to the response, docs. 32-33, and the reply was filed on December 16,

2011.  Doc. 34.

This case challenges a rule of the Department of Corrections that expressly

prohibits Plaintiff, as a state prisoner, from listing a cellular phone number to be placed

on his inmate telephone list of telephone numbers he may call.  Doc. 10 (amended

complaint).  Plaintiff contends he is prevented from making telephone calls to friends

and family who have cellular phones, in violation of the First Amendment.  *Id.*, at 8.  He

further contends the rule violates his equal protection rights because other Florida

prisoners (in federal prison, county jails, and private facilities) are permitted to make

calls to cellular phones.  *Id.*, at 7-8.  Plaintiff seeks a declaratory judgment and

injunctive relief only.  Doc. 10, p. 8.

Defendant asserts that summary judgment should be granted because Plaintiff's

complaint fails to rise to the level of a constitutional violation.  Defendant contends that

Plaintiff's First Amendment rights may lawfully be impinged where a prison regulation is

reasonably related to a legitimate penological interest as described in Turner v. Safley,

482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Doc. 29.  Defendant argues that

security concerns justify the burden on Plaintiff's First Amendment rights and that he still

has other avenues available to him to communicate with family and friends.  Defendant

claims the restriction is not an exaggerated response to a legitimate concern.  Finally,

Defendant contends that Plaintiff fails to demonstrate an equal protection violation

because Defendant is not treating other inmates differently within the Florida

Department of Corrections.  *Id.*, at 18-19.  Defendant argues that the "similarly situated"

standard must apply to other prisoners in the Florida Department of Corrections and not

just other prisoners at federal prisons, or local jails, and the Defendant expressly denies

that prisoners at privately operated facilities are permitted to have cell phone numbers

placed on an inmate's telephone calling list.  *Id.*, at 19.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, the Defendant initially has the burden to

demonstrate an absence of evidence to support the nonmoving party's case.  Celotex

Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d

265 (1986).  If the Defendant does so, the burden shifts to Plaintiff to come forward with

evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An

issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v.

Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).

Plaintiff must show more than the existence of a "metaphysical doubt" regarding the

material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475

U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of

evidence is insufficient.  The court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting*

Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202

(1986).  All reasonable inferences must be resolved in the light most favorable to the

nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if

there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

The Florida Department of Corrections "is the third largest prison system in the United States, housing an average of more than 100,000 convicted felons in 121 institutions throughout the State of Florida."  Doc. 29, p. 2; Ex. B, p. 2 (doc. 29-1, p. 7).  The Department provides prisoners with telephone privileges so that the prisoner may maintain relationships while he or she is incarcerated.  Doc. 29, ex. B, p. 2 (doc. 29-1, p. 7).

Rule 33-602.205 is the rule challenged by Plaintiff in this case, and it is provided as Exhibit A to Defendant's motion, doc. 29-1.  The rule concerns inmate telephone use,

and permits an inmate to have "no more than 10 names and numbers of persons he or she wishes to access."  Doc. 29-1, Ex. A.  Only persons on that list may be called, and no three-way telephone calls or transferred calls are permitted.  *Id.*  Paragraph (2)(a) of the rule states that "[i]nmates shall not be allowed to include business telephone numbers or cell phone numbers on the list."  *Id.*

The basis for the rule is that cell phone technology prevents the Department of Corrections from knowing the location of the person to whom the inmate is speaking, and the mobility of cell phones poses an additional security risk to prison facilities. Doc. 29, Exhibits B, C.  Prepaid cell phones are a problem because the owner of the phone cannot be identified.  *Id.*  Security concerns are reduced by restricting out-going calls to "land line" telephones, which permits identification of the owner of the telephone as well as verification of the physical location of the phone.  Doc. 29-1, p. 9 (Ex. B).  All phone numbers are verified to confirm whether or not they are cell phone numbers before they are placed on an inmate's telephone list.  Doc. 29-1, p. 9 (Ex. B).

Defendant presents evidence that if an inmate should escape, knowing the identity of the persons to whom the inmate spoke and their locations will provide possible destinations of the escapee or the location of persons who may have aided the escape effort.  Doc. 29-1, pp. 7-8 (Ex. B).  Furthermore, if criminal activity is discussed on a telephone call, the Department can quickly provide location and identity information to outside law enforcement.  More importantly, even if verification of a cell phone's owner could be resolved, the ability of a person being called or calling on a cell to move around and perhaps wait outside or nearby the perimeter fence of a correctional institution "to aid in attacks or escapes cannot be thwarted."  Doc. 29-1, p. 13 (Ex. C).

"The Department does not have the technology to locate a cell phone in real time, and attempts to pinpoint locations after the fact would create a burden and expense on the Department." *Id.*

In the motion for summary judgment, Defendant listed several instances of escapes or escape attempts in which cell phones were reportedly used. Doc. 29, p. 5[2] (doc. 29-1, pp. 9-10, Ex. B). In an escape attempt at Everglades Correctional Institution, the inmate "arranged his escape over the telephone with his mother, and was assisted in his escape by someone in the facility parking lot; a citizen was killed as a result of that" incident. *Id.* In Arizona, three inmates escaped from a private prison facility and murdered two citizens; the escape was coordinated by cell phones. *Id.* In South Carolina, cell phone coordination was suspected when a prisoner escaped, assisted by someone parked next to the facility in the woods. *Id.* Similarly, "in Texas, an inmate escaped an institution, reportedly aided by a cell phone." *Id.* Also, in Nevada and in Massachusetts, escapes were successfully carried out using cell phones that had been smuggled into an institution. *Id.*

In Florida, privately run prison facilities under contract with the Department are required to adhere to Departmental rules, including the rule which prohibits cell phone numbers on inmate calling lists. Doc. 29-1, p. 13 (Ex. C); doc. 29-1, pp. 1-2 (Ex. D). No privately run correctional Institution (including Moore Haven, South Bay, Bay, Gadsden, Greenville, Lake City, and Blackwater River) permits inmates to place cell phone numbers on their call lists. Doc. 29-1, exhibits D-K. Each telephone number is checked

---

[2] The page numbering corresponds to the page number on CM/ECF, the electronic docket. The numbering provided on the actual document is one number off, as the printed page 2 is page 3 of the electronic document.

to confirm that the number is not a cell phone number and if, by mistake, such a number was discovered on a call list, it would be immediately removed.  Doc. 29-1, p. 18 (Ex. E).

The Defendant also presented Exhibit L to show that Plaintiff has family members who have land line telephone numbers, and he may write and correspond with family and friends, and receive personal visits.  Doc. 29, p. 6; Ex. L.  Exhibit L is identified as excerpts from Plaintiff's deposition, taken on August 4, 2008.  Doc. 29-1, p. 1.  There, Plaintiff explains that his father lives in Georgia and is unable to visit because of the distance, a problem with his eyes, and his age.  Doc. 29-1, pp. 34-35 (Ex. L).  The last visit Plaintiff had with his father was approximately in 2002.  *Id.*, at 34.  Plaintiff's mother has also been unable to visit due to the distance, medical issues, and her age.  *Id.*, at 35.  Plaintiff last saw his mother five years ago.  *Id.*  Plaintiff reported that due to the fact that he was housed away from his family, his visitation abilities were limited with his brother and sister as well.  *Id.*  Plaintiff said that his sister, mother, and father all had land line telephones.  *Id.*, at 37-38.  Plaintiff's son only has a cell phone, *Id.*, at 38, and Plaintiff's brother only has a cell phone.  *Id.*, at 42.

Plaintiff explained that when he has spoken to inmates who came into state prisoner from federal prisons, they indicated to Plaintiff that "they were always able to call cellular telephone numbers."  *Id.*, at 46-47.  Plaintiff admits that he does not know that from his own personal knowledge.  *Id.*, at 46.  Additionally, Plaintiff testified in his deposition that most inmates come into state prison from county jails, and "they all tell me that they can make calls to cellular telephones."  *Id.*, at 47.  Plaintiff further reported hearing from others that inmates in private prison facilities (Blackwater and Moore

Haven) could make calls to cellular telephones.  *Id.*, at 47-48.  Plaintiff said that to his knowledge, none of the Department of Corrections' institutions allow inmates to make calls to cellular telephones.  *Id.*, at 49-50.

Plaintiff has submitted his own affidavit in response.  Doc. 31, Ex. A.  Plaintiff asserts that his son, sister, brother, and father now only have cellular telephones, and because of Rule 33-602.205(2)(a), he is unable to communicate with his family "via telephone" and "maintain relationships with them." *Id.*, at 2.  Plaintiff states that these family members do not like to write, but "prefer to talk on the phone."  *Id.*  He avers that they "cannot afford to come visit [him] on a regular basis . . . ."  *Id.*

Plaintiff attached several other affidavits by other prisoners as well.  Doc. 31, exhibits B-D.  In general, those affidavits assert that cellular phone calls were permitted at Lake County Detention Center (Ex. B), at the Seminole County Jail (Ex. C), and at the Federal Detention Center in Miami, Florida (Ex. D).

**Analysis**

**Equal Protection Claim**

To establish a claim under the Equal Protection Clause, a prisoner must demonstrate (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the Defendant "engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001), *quoted in* Sweet v. Secretary, Dept. of Corrections, 467 F.3d 1311, 1318-1319 (11th Cir. 2006); *see also* Damiano v. Florida Parole and Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986).  Plaintiff's equal protection claim fails because Plaintiff does not show that the Defendant

discriminated against him and has treated other inmates more favorably because there is no evidence that the Defendant allows any other inmates within the custody and control of the Florida Department of Corrections to have cellular phone numbers on an inmate's calling list.

Prisoners in county jails or a federal detention center are not similarly situated to Plaintiff because Defendant has no authority to control the actions of county jails or federal facilities.  Summary judgment should be granted in Defendant's favor on this claim.

**First Amendment claim**

"Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner."  Overton v. Bazzetta, 539 U.S. 126, 131, 123 S.Ct. 2162, 2167 (2003).  Inmates retain only those rights which are not "inconsistent with proper incarceration."  Overton, 539 U.S. at 131, 123 S.Ct. at 2167, *citing* Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); Shaw v. Murphy, 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001).

Plaintiff has presented his First Amendment claim as an infringement on his right to freedom of speech.  Doc. 10, p. 8.  The freedom asserted by Plaintiff is grounded both in freedom of speech and in freedom of association.  *See* Roberts v. U.S. Jaycees, 468 U.S. 609, 617-618, 104 S.Ct. 3244, 3249 (1984) (recognizing the right to associate for purposes of First Amendment activities such as freedom of speech and for "preserving other individual liberties.").[3]  Determining the precise foundation for

_____

[3]  "Some courts considering the issue of restricted telephone access have expressed the opinion that inmate use of a telephone for calls is not a right at all, but merely a privilege extended by the correctional facility to foster continued

Plaintiff's claim is unnecessary because the challenged rule bears "a rational relation to legitimate penological interests." Overton, 539 U.S. at 132, 123 S.Ct. at 2167 (declining to "explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests"), and citing Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), for taking a similar approach.

In Turner v. Safley, *supra*, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S., at 89, 107 S.Ct. 2254, *quoted in* Shaw v. Murphy, 532 U.S. 223, 229-230, 121 S.Ct. 1475, 1479 (2001). Four factors are relevant considerations under this standard: "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation." Overton, 539 U.S. at 132, 123 S.Ct. at 2168; *see also* Shaw v. Murphy, 532 U.S. 223, 229-230, 121 S.Ct. 1475, 1479 (2001) (upholding prison regulation which placed certain limits on visitation with prisoners). "If the connection between the regulation and the asserted goal is 'arbitrary or irrational,' then the regulation fails, irrespective of whether the other factors tilt in its favor." Shaw, 532 U.S. at 229-230, 121 S.Ct. at 1479, *citing* Turner, *supra*.

Access to telephone in prison is governed by these principles.

communication with family and friends outside the prison." Arney v. Simmons, 26 F.Supp.2d 1288, 1293 (D. Kan., 1998).

[F]ederal court opinions have previously held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends, *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975), and have recognized that "there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment." *Johnson v. Galli*, 596 F.Supp. 135, 138 (D. Nev. 1984).

Nevertheless, an inmate "has no right to unlimited telephone use." *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir.), *cert. denied*, 493 U.S. 895, 110 S.Ct. 244, 107 L.Ed.2d 194 (1989), *citing Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982).  Instead, a prisoner's right to telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986).  "The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Fillmore v. Ordonez*, 829 F.Supp. 1544, 1563–64 (D. Kan. 1993), *aff'd*, 17 F.3d 1436 (10th Cir. 1994), and *citing Feeley v. Sampson*, 570 F.2d 364, 374 (1st Cir. 1978), and Jeffries v. Reed, 631 F.Supp. 1212, 1219 (E.D. Wash. 1986).

Washington v. Reno, 35 F.3d 1093, 100 (6th Cir. 1994).

Thus, in Pope v. Hightower, 101 F.3d 1382 (11th Cir. 1996), a prisoner challenged a restriction on telephone access for prisoners in an Alabama maximum security prison.  Prisoners there were limited to ten individuals on their telephone lists.  The court held that the restriction was valid, applying the Turner factors.  The court held: "Reduction of criminal activity and harassment qualifies as a legitimate governmental objective.  The connection between that objective and the use of a ten-person calling list is valid and rational because it is not so remote as to render the prison telephone policy arbitrary or irrational."  101 F.3d at 1385.  The court further held that visitation and correspondence were adequate alternatives.  *Id.*

In the case at bar, there is a 'valid, rational connection' between the prison rule challenged here and the legitimate governmental interest put forward to justify it."

Turner, 482 U.S. at 89, 107 S. Ct. at 2262.  The rule exists primarily because of security concerns over the mobility of cellular phones, the difficulty of determining the owner of a cell phone, and the inability to confirm the owner of some pre-paid telephones.  Prison authorities have a valid interest in preventing prison escapes or attempts to do so, or preventing crime committed by telephone from prison.  Defendant's evidence reveals the danger of permitting cellular phone calls to and from prisoners.  While even a land line may be used by a person other than the person to whom the telephone is registered, if there is an escape or other criminal plans revealed in a phone call to or from a land line, the Department has a place from which to begin an investigation and a person at that place to whom the telephone is registered.  Cell phones are not connected to a particular place, and could be used to facilitate an escape by calling from just outside the institution to an inmate desiring to escape, alerting him to the presence or absence of security, or advising of the location of a getaway vehicle. Because cell phones are so mobile, criminal conspirators often have one person sign up for the cell phone plan and who then gives it to another to use in the conspiracy.  Pre-paid cell phones often do not even have a connection to a person.  The rule is rationally connected to the significant penological interest in preventing escapes or other crimes originating from prison.

The second factor also weighs in favor of the Defendant because Plaintiff has alternative means of exercising the right asserted.  There is a dispute as to how many telephone land lines Plaintiff's family members have and whether those are useful, but Plaintiff's mother has a land line and friends of the family probably have land lines. Plaintiff may still communicate with family and friends by means of some land line.

Furthermore, Plaintiff has an alternative means of exercising his First Amendment rights through letters to and from family and friends, and personal visitation when possible.[4] That fact that Plaintiff's family would *prefer* to make telephone calls over writing letters does not determine whether Plaintiff has alternative means available.

Plaintiff has not pointed to some "ready alternatives" to the rule which meets the security concerns of the Department concerning cellular phones.  Plaintiff asserts that "there are extremely cost effective ways to minimize" escape risks, doc. 31, p. 5, but Plaintiff does not identify any such ways.   Nor has Plaintiff provided any argument or information as to the impact any identifiable accommodation would have on correctional officers, inmates, and prison resources.

**Conclusion**

Consideration of the <u>Turner</u> factors leads to the conclusion that the rule is reasonable, rationally-related to an important interest, and Plaintiff's constitutional rights are not violated.


Accordingly, it is **RECOMMENDED** that the Defendant's motion for summary judgment, doc. 29, be **GRANTED**, and judgment entered in Defendant's favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 15, 2012.

---

[4] The distance between Plaintiff and his family impedes personal visitation as explained in Plaintiff's deposition, but it is still an alternative.  *See* <u>Overton v. Bazzetta</u>, 539 U.S. at 135, 123 S.Ct. at 2169 (stating that "[a]lternatives to visitation need not be ideal, however; they need only be available.").

Case No. 4:10cv441-MP/WCS

S/  William C. Sherrill, Jr.   
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

   A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.