# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**THOMAS PERRY WELLS, JR.,**

    Plaintiff,

vs.                                               Case No. 4:10cv441-MP/CAS

**KENNETH S. TUCKER, Secretary,**
**Florida Department of Corrections,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

    This case was remanded after consideration of the Report and Recommendation entered on February 15, 2012. Doc. 42. Summary judgment was denied as to the pro se Plaintiff's First Amendment claim, finding there was a genuine dispute of material fact concerning the availability of less restrictive alternatives to the policy at issue in this case. *Id.* Plaintiff was challenging FLA. ADMIN. CODE R. 33-602.205(2)(a) which prohibited listing cellular telephone numbers on an inmate's approved phone list, which Plaintiff claimed prevented him from communicating with his family and friends because several of them do not have "land line" telephones. Doc. 10.

Chief United States District Judge Casey Rodgers noted that the Department of Corrections was pursuing a rule change which would likely moot Plaintiff's First Amendment claim.  Doc. 42.  The Department filed a motion for reconsideration and advised that the amended rule was scheduled to go into effect on June 14, 2012, and argued that Plaintiff's claim was moot.  Doc. 44.  However, because "the rule allowing for inmate calls to cell phones has not yet been implemented, [the Court found that] the plaintiff's claim [was] not moot."  Doc. 45.  That Order, doc. 45, was entered on June 6, 2012.

The parties were directed to advise the Court on the status of the rule change and to address the issue of mootness.  Doc. 43.  Plaintiff's response was filed on June 18, 2012, and he acknowledged the rule was not "expected to legally go into effect until June 14, 2012."  Doc. 49.  Plaintiff pointed out that in Defendant's motion for reconsideration, doc. 44, Defendant "cannot and does not commit to a permanent rule permitting unfettered access to calling cell phones."  Doc. 49, at 2, quoting doc. 44, at 11.  Accordingly, Plaintiff maintains this case is not moot and his request for a declaratory judgment should proceed since the Defendant could change the rule back in the future.  Doc. 49, at 3.  Plaintiff points out that voluntary cessation of challenged conduct will moot a case, but only when it is clear that the conduct "cannot reasonably be expected to start up again."  *Id.* at 4-5.

**Motion to Dismiss, doc. 48**

Defendant filed a motion to dismiss the complaint as moot on June 18, 2012.  Doc. 48.  At the time Plaintiff initiated this case, Rule 33-602.205(2)(a) provided: "Inmates shall not be allowed to include business telephone numbers or cell phone

numbers on the list." Doc. 48 at 2. Defendant states that Rule 33-602.205 was amended and made effective June 14, 2012. *Id.* at 3. The amended rule now permits "[c]ollect calls to personal cell phone numbers" with specified requirements such as no pre-paid or business cell phones are allowed, and the "cell phone must be contracted through a wireless telecommunications company licensed by the Federal Communications Commission." *Id.* As a result of this amendment, Defendant asserts that "Plaintiff no longer meets the case or controversy requirement to state a claim, and his Amended Complaint is now moot." *Id.*

On June 21, 2012, Defendant also filed a supplement to the motion, doc. 50, which addresses Plaintiff's contention in his response that although his request for injunctive relief would be moot, the request for declaratory relief would remain. *Id.* at 1-2. Defendant asserts there is nothing "about which to litigate at this point." *Id.* at 3.

Prior to ruling on the motion to dismiss, doc. 48, Plaintiff was provided an opportunity to file a response. Doc. 51. In particular, Plaintiff was to address Defendant's argument in the supplement, doc. 50, that both his injunctive and declaratory requests were moot.

Plaintiff's response was timely filed on August 14, 2012. Doc. 55. Plaintiff argues that Defendant does not meet the "heavy burden of assuring the Court that there is no reasonable expectation that the alleged violation will recur . . . ." *Id.* at 2. Plaintiff points again to Defendant's statement that it "cannot and does not commit to a permanent rule permitting unfettered access to calling cell phones." *Id.*, *citing to* doc. 44 at 11. Because Plaintiff contends there is no assurance the allegedly wrongful behavior

will not recur, Plaintiff argues his requests for declaratory and injunctive relief are "not moot." Doc. 55 at 2.

**Additional Considerations**

In Plaintiff's objections to the report and recommendation entered by Magistrate Judge Sherrill, Plaintiff presented information to the Court for the first time that the Department of Corrections had issued a memorandum concerning a Notice of Rule Development for the rule challenged in this case. Doc. 38 at 18, referenced in the motion to dismiss, doc. 44 at 2. The Notice was dated February 28, 2012, and stated the notice of rule development would "appear in the Florida Administrative Weekly on March 9, 2012." Doc. 38 at 18. Thus, the process for amending the rule was formally initiated after the report and recommendation, doc. 35, was entered on February 15, 2012, and approximately one year after Plaintiff's amended complaint, doc. 10, was served on the Defendant. *See* doc. 15 (served on March 18, 2011).

Attached to Defendant's motion to dismiss was an exhibit which contained the Proposed Rule 33-602.205 Rule Certification Packet. Doc. 48, Ex. C. The "statement of facts and circumstances justifying" the rule provided by the Department of Corrections provided: "The proposed change is needed for staff and inmate guidance and to address increased consumer use of wireless technology." *Id.* The rule's summary stated: "The rule is amended to permit inmates to make collect calls to personal cell phones, inmate family/friends to establish payment accounts for cell phone

calls, and temporary deactivation[1] of telephone accounts under limited circumstances." *Id.*

In the motion for reconsideration, doc. 44, filed on May 11, 2012, prior to the filing of Defendant's motion to dismiss, the Department explained that the rule amendment was specifically "designed to address some of the increased security concerns involved in calling cell phones versus land lines."  Doc. 44 at 2, ¶5, and at 9.  Nevertheless, the Department advised that it was "unknown whether the security measures required in the proposed" rule amendment would "suffice to prevent" the security issues about which the Department was concerned.  Doc. 44, at 3, ¶7, and at 10-11.  Defendant said that "risks still exist and whether the amendment is a reasonable alternative to the prohibition of calling cell phones remains to be seen."  *Id.* at 11.  Furthermore, the Department advised that while the amendment was moving forward (which by now has been implemented), "the Department cannot and does not commit to a permanent rule permitting unfettered access to calling cell phones."  *Id.*  Defendant said, "If the department were to determine in the future that the endeavor to permit inmates to call cell phones was simply too dangerous, do [sic] perhaps to some future event, and the department were to change the rule, at that time plaintiff could initiate a complaint to challenge that rule."  *Id.* at 12.  "At this time, however, the rule Plaintiff was challenging is slated to be replaced with conditions Plaintiff sought" and, thus, "Plaintiff's Complaint is now moot."  *Id.*

---

[1] The provision concerning deactivation, which is not at issue in this case, permits the Department to "temporarily deactivate any inmate's telephone account" in the 48-hour period prior to a transfer, outside medical appointment, or outside court appointment.  Doc. 48, Ex. C.

**Analysis**

It is uncontested that the rule has been amended and has now gone into effect. Plaintiff's ability to place cellular phone numbers on his inmate phone list so that Plaintiff can communicate with family and friends is now etched in an administrative rule. Plaintiff has achieved that which he sought in this case. The only real dispute remaining is Plaintiff's argument that implementation of the rule did not moot Plaintiff's claim because this case fits within the "voluntary cessation" exception to mootness. Another issue raised by Plaintiff is whether, notwithstanding the request for injunctive relief, Plaintiff is still entitled to declaratory relief.

Article III, Section 2 of the United States Constitution limits the judicial power of the federal courts shall to hear only "cases" and "controversies." Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1327 (11th Cir. 2004), cited in National Adver. Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005), *also citing* Lujan v. Defenders of Wildlife, 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Where changes in the law or in circumstances render a case moot because there is no longer a live controversy between the parties, the Article III case or controversy requirement is not met. National Adver., 402 F.3d at 1332. "By its very nature, a moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.' " Coral Springs, 371 F.3d at 1328, *quoted in* National Adver., 402 F.3d at 1332. A federal court cannot render a decision on the merits of a case "where changes in the law have rendered the case moot" as that would constitute an improper advisory opinion. National Adver., 402 F.3d at 1332; Coral Springs, 371 F.3d at 1328 (internal citations omitted), *quoted in* 402 F.3d at 1332;

Case No. 4:10cv441-MP/CAS

*see also* Al Najjar v. Ashcroft, 273 F.3d 1330, 1336 (11th Cir. 2001).  As a general rule, amendment or repeal of a statute moots legal challenges to that legislation.  *See* National Adver., 402 F.3d at 1333, n.5 for list of such cases.

An exception to that general rule "is that mere voluntary termination of an allegedly illegal activity is not always sufficient to render a case moot and deprive the federal courts of jurisdiction to try the case."  402 F.3d at 1333; National Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga., 633 F.3d 1297, 1309 (11th Cir. 2011); Jews for Jesus, Inc. v. Hillsborough Co. Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998), *citing* County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).  "Otherwise, a party could moot a challenge to a practice simply by changing the practice during the course of a lawsuit, and then reinstate the practice as soon as the litigation was brought to a close."  Jews for Jesus, Inc., 162 F.3d at 629.  Thus, "the voluntary cessation of challenged conduct will only moot a claim when there is no 'reasonable expectation' that" the conduct or rule will be resumed.  National Ass'n of Bds. of Pharmacy, 633 F.3d at 1309, *citing* Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 708, 145 L.Ed.2d 610 (2000).  The Supreme Court has enunciated this as a stringent standard, finding a case is moot when "subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968), *quoted in* Friends of the Earth, Inc., 528 U.S. at 189, 120 S.Ct. at 708 (stating "[t]he 'heavy burden of persua[ding]' the court that the challenged conduct

cannot reasonably be expected to start up again lies with the party asserting mootness.").

"[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." Coral Springs, 371 F.3d at 1328-29, citing Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th Cir. 1988) (noting that "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties."). Indeed, the Eleventh Circuit has applied a "rebuttable presumption" in favor of government defendants. National Ass'n of Bds. of Pharmacy, 633 F.3d at 1310, citing Harrell v. The Fla. Bar, 608 F.3d 1241, 1266 (11th Cir. 2010); Troiano v. Supervisor of Elections, 382 F.3d 1276, 1283 (stating "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur.").[2]

---

[2] "In cases where government policies have been challenged, the Supreme Court has held almost uniformly that voluntary cessation of the challenged behavior moots the claim." Beta Upsilon Chi Upsilon Chapter v. Machen, 586 F.3d 908, 917 (11th Cir. 2009), citing e.g., Lewis v. Cont'l Bank Corp., 494 U.S. 472, 474, 110 S.Ct. 1249, 1252, 108 L.Ed.2d 400 (1990); Princeton Univ. v. Schmid, 455 U.S. 100, 103, 102 S.Ct. 867, 869, 70 L.Ed.2d 855 (1982) (per curiam); Kremens v. Bartley, 431 U.S. 119, 128-29, 97 S.Ct. 1709, 1715, 52 L.Ed.2d 184 (1977); Diffenderfer v. Cent. Baptist Church, Inc., 404 U.S. 412, 415, 92 S.Ct. 574, 576, 30 L.Ed.2d 567 (1972). "Accordingly, an assertion of mootness will be rejected 'only when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated.'" Beta Upsilon Chi Upsilon Chapter, 586 F.3d at 917, quoting Troiano, 382 F.3d at 1284 (citing City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289 & n.11, 102 S.Ct. 1070, 1074-75 & n.11, 71 L.Ed.2d 152 (1982), a case where the Court decided that a challenge to a city statute was not moot, because even though the city had repealed the statute, there was "no certainty" that the city would not reenact the law and the city had announced its intention to reenact the offending statute if the Court dismissed the case.).

To determine the mootness inquiry in a case involving governmental conduct, three factors are analyzed: (1) whether cessation of the challenged action was "unambiguous;" (2) whether the cessation or change in government policy was the product of "substantial deliberation" or just an attempt to manipulate jurisdiction; and (3) whether a new policy has been "consistently applied" or a new course of conduct has been adhered to after voluntary cessation.  National Ass'n of Bds. of Pharmacy, 633 F.3d at 1310.  Courts may also look to the timing of the cessation and the content of the decision to terminate the activity or practice in resolving this issue.  Harrell, 608 F.3d at 1267.  In Harrell, the Eleventh Circuit found that the circumstances raised "a substantial possibility that 'the defendant has . . . changed course simply to deprive the court of jurisdiction,' which" prevented finding the controversy was moot.  608 F.3d at 1267 (noting the Board "acted in secrecy, meeting behind closed doors and, notably, failing to disclose any basis for its decision.").  Here, the Department acted in the open, publicly publishing the proposed rule and allowing for comment.  The administrative rule-making process itself provides a basis for finding that there was a legitimate purpose for the rule, as was stated, and that the amended rule was the result of well-reasoned decision making.

Additionally, in ACLU v. The Florida Bar, 999 F.2d 1486 (11th Cir. 1993), the Eleventh Circuit reversed the district court's decision that the case was moot in part, at least, because the Bar maintained its position that the challenged Canon was constitutional, it would not be bound by statements that it would not enforce Canon 7(B)(1)(a) against Shack, and other judicial candidates would not know where they stood.  999 F.2d at 1495.  In this case, while the Department has repeatedly

maintained that the Rule was constitutional, no uncertainty remains for Plaintiff or other inmates as to the issue of cellular phones. Inmates may now have cell numbers listed on their approved phone lists.

In this case, it is somewhat problematic to find that cessation of the challenged action is "unambiguous" because Defendant has advised on the record that it does not commit to the amended rule remaining in place permanently and that it must evaluate how effective the rule is against the security interests presented. Nevertheless, the same position could be said for nearly every rule that is enacted; what seemed like a good idea at the time, in principle, may need adjustments and refinements to its practical application. The Department's amended rule is now in effect, and it is reasonable to believe that the Department will move forward and make changes as may be needed to ensure safety, while preserving the intended purpose. Yet considering the advancements made in technology, it is unlikely that the amended rule cannot be tweaked enough to enable its continued existence, notwithstanding the valid security interests put forth by the Department. Moreover, should the rule prove ineffective and amended again, it is more than likely that any challenge then brought would be to a different rule than was challenged by Plaintiff in this case.

On the second point, the Department's process of amending rules under Florida's Administrative Code leads to the conclusion that the change in government policy was the product of "substantial deliberation" and not just an attempt to manipulate jurisdiction. There are procedures which must be followed in the amendment process which sufficiently demonstrates the rule change was not a quick reaction to eliminate a problem. *See* FLA. STAT. § 120.54. Furthermore, the timing of the rule amendment

does not suggest it was an effort to manipulate jurisdiction because on February 15, 2012, the report and recommendation was entered which recommended *granting* summary judgment in Defendant's favor. Doc. 35. The Notice of Rule Development was dated February 28, 2012, and the Notice would "appear in the Florida Administrative Weekly on March 9, 2012." Doc. 38 at 18. Thus, the process for amending the rule was formally initiated after issuance of a report and recommendation, doc. 35, which was in Defendant's favor.

Due to the recent change in this rule, it cannot be said that the new policy has been "consistently applied" or adhered to after voluntary cessation. Yet considering the enactment of a formal rule, there is a presumption that it will be adhered to and, moreover, it must be consistently applied as to all inmates or a different type of challenge will be brought before this Court.

While Defendant's statements in this litigation suggest a hesitancy to commit to the changed rule, that is presumed to be over a concern for safety, an interest which must be paramount in the operation of a prison. This is not a case where cessation is motivated by a desire to avoid liability rather than a genuine change of heart. *See* Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 71–72, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983); Nat'l Adver. Co. v. City of Miami, 402 F.3d 1329, 1333 (11th Cir. 2005) (per curiam) ("[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction."); Sheely v. MRI Radiology Network, 505 F.3d 1173, 1186 (11th Cir. 2007).

It is a matter of practicality to ensure the amended rule accomplishes its intended goal: to enhance communication while still ensuring security.

Here, the rule adoption procedure provides sufficient evidence to demonstrate that this is not simply a voluntary cessation of an activity, but the creation of a policy reflecting a changed position by the Department, and establishing a rule which will be followed by prison officials statewide. See FLA. STAT. § 120.52(16)("Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy . . . ."). The presumption must be given to the Department of Corrections that it will not revoke the rule and return to the prior rule after this case is over. Accordingly, the case or controversy requirement is not met as there is no longer a live controversy between the parties. Plaintiff will be able to do that which he was previously denied, and which he sought in this litigation. This case is moot and it must be dismissed for lack of subject matter jurisdiction.[3]

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to dismiss, doc. 48, be **GRANTED** and this case be **DISMISSED** as moot.

**IN CHAMBERS** at Tallahassee, Florida, on September 18, 2012.

    S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] Such a dismissal means that Plaintiff is not entitled to a declaratory judgment. When a complaint is moot, neither declaratory judgment nor injunctive relief are possible. See American Fed'n of Labor and Congress of Indus. Orgs. v. City of Miami, 637 F.3d 1178, 1184 (11th Cir. 2011). "We lack the power to retain jurisdiction over a moot controversy for the purpose of rendering an advisory opinion." Beta Upsilon Chi Upsilon Chapter at the Univ. of Fl. v. Machen 586 F.3d 908, 918 (11th Cir. 2009), citing CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 48 F.3d 618, 622 (1st Cir. 1995).

## **NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**